**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

AMY DENISE MCBRYDE                                          PLAINTIFF

V.                          No. 4:25-CV-00277-KGB-JTK

FRANK BISIGNANO, Commissioner,
Social Security Administration                              DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation, and those objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within fourteen days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.   Relevant History:

On September 9, 2020, Amy McBryde applied for Title II disability benefits, alleging disability beginning July 9, 2020. (Tr. at 111). After her claim was denied initially and on reconsideration, she requested and received a hearing before the Administrative Law Judge ("ALJ"), where she appeared without representation and amended her alleged onset of disability to December 25, 2019. *Id*. On July 9, 2021, the ALJ denied McBryde's application, finding that she was not disabled as of December 25, 2019. (Tr. at 111–17).

1

McBryde requested review and supplemented the record with a letter from her general practitioner, Dr. Kenneth Johnston, dated September 15, 2021. (Tr. at 275). After the Appeals Council denied review, McBryde appealed to the United States District Court for the Eastern District of Arkansas, which considered the entire record—including the 2021 letter from Dr. Johnston—and affirmed the Commissioner's decision. *See McBryde v. Kijakazi*, No. 4:22-cv-00572-DPM-JJV, 2023 WL 2186461 (E.D. Ark. 2023), adopted by *McBryde v. Kijakazi*, No. 4:22-cv-00572-DPM, 2023 WL 3321782 (E.D. Ark. 2023) ("*McBryde I*").

McBryde filed a second application for Title II disability benefits on August 11, 2023, again claiming she became disabled on December 25, 2019. (Tr. at 54). McBryde submitted the September 15, 2021 letter from Dr. Johnston as evidence, as well as the following additional documents: (1) an August 19, 2021 letter from Sarah Brown, a nurse practitioner at South Arkansas Cardiovascular & Vein Center; (2) a written statement from McBryde's brother, Brandon Bassett; (3) a written statement from McBryde's husband, Matt McBryde; and (4) McBryde's own notarized affidavit. (Tr. at 256–82).

McBryde's claim was denied at the initial and reconsideration levels based on res judicata. (Tr. at 122, 127). McBryde requested a hearing before an ALJ, and a telephone hearing was held on May 7, 2024. (Tr. at 58). Although the ALJ advised McBryde that the hearing could be postponed for her to obtain representation and that she had a right to representation, she chose to proceed pro se. (Tr. at 61–62). On June 5, 2024, the ALJ dismissed McBryde's new application, finding that her claim was barred by administrative res judicata. (Tr. at 54–56).  Specifically, the ALJ found that McBryde presented the same

issues in her 2023 application for disability benefits that had previously been denied in 2021, which became final by administrative action. (Tr. at 54–55). The ALJ found that the additional documents McBryde provided—the previously submitted letter from Dr. Johnston, the letter from Nurse Practitioner Brown, the letters from her brother and husband, and her affidavit—did not contain new material facts. (Tr. at 55). The ALJ concluded that "[a]ssuming for the sake of argument that the evidence claimant has submitted in the instant case is 'new,' it is not 'material,' [because] it does not show facts 'that would have resulted in a different conclusion as to eligibility, entitlement, or benefit amount than originally reached had the evidence been introduced or available at the time of the determination or decision.'" *Id*. The Appeals Council subsequently denied review, and McBryde has filed pro se seeking judicial review. (Tr. at 1).

## II.    **Discussion**:

Pursuant to 42 U.S.C. § 405(g), an individual may seek judicial review "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party." The Supreme Court has concluded that the term "final decision" is a "statutorily specified jurisdictional prerequisite." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). As outlined in the regulations promulgated by the Social Security Administration ("SSA"), a disability determination becomes a "final decision" for federal court review after a four-step administrative inquiry that includes: (1) initial determination; (2) reconsideration; (3) a hearing before the ALJ; and (4) Appeals Council review. *See* 20 C.F.R. § 404.900(a).

3

Generally, however, courts lack jurisdiction to review the application of res judicata[1] by the SSA. In *Califano v. Sanders*, 430 U.S. 99, 108 (1977), the Supreme Court held that § 205(g) of the Social Security Act, codified at § 405, did not authorize judicial review of the SSA's decision not to reopen a previously adjudicated claim for benefits where the claimant had filed a second duplicative application. *See also Harapat v. Califano*, 598 F.2d 474, 477 (8th Cir. 1979) (concluding that the court did not have subject matter jurisdiction where claimant filed multiple applications for disability and the SSA denied subsequent applications based on res judicata).

The Commissioner cites *Smith v. Berryhill*, 587 U.S. 471 (2019), as potentially affecting whether the SSA's finding of res judicata in this case constitutes a final decision subject to judicial review. *See* Doc 40, at 17. Although the Commissioner has declined to invoke § 405(g) as a bar to judicial review, subject matter jurisdiction is not waivable by the parties and must be determined by the court. *Pacific Nat'l Ins. Co. v. Transport Ins. Co.*, 341 F.2d 514, 516 (8th Cir. 1965) (noting that "parties . . . may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court"); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

---

[1] An ALJ may dismiss a request for a hearing or refuse to consider any issue based on the doctrine of res judicata. 20 C.F.R. § 404.957. Res judicata applies where there has been a previous determination or decision about the claimant's rights on the same facts and on the same issue or issues and that previous determination or decision has become final by either administrative or judicial action. *Id.*; *see also* HA 01240.040, 01290.040 (outlining the process for res judicata).

In *Smith*, the Supreme Court held that where the Appeals Council dismissed a request for review as untimely after a claimant obtained a hearing from the ALJ on the merits, that dismissal qualifies as a "final decision" under § 405(g). 587 U.S. at 489. The Court acknowledged that "[u]nlike a petition to reopen, a primary application for benefits may not be denied without an ALJ hearing . . . Moreover, the claimant's access to this *first bite at the apple* is indeed a matter of legislative right rather than agency grace." *Id*. at 481 (emphasis added). The *Smith* Court distinguished its holding from that in *Sanders*, *supra*, noting that "Smith is not seeking a second look at an already-final denial; he argues that he was wrongly prevented from continuing to pursue his primary claim for benefits. That primary claim, meanwhile, is indeed a matter of statutory entitlement." 587 U.S. at 485.

McBryde is seeking a second look at an already-final denial; her case is more akin to *Sanders* than *Smith*. McBryde's original application for disability benefits was filed in 2020. It proceeded through the full review process—initial consideration, reconsideration, ALJ review, petition to the Appeals Council, and judicial review. McBryde filed her second application for disability benefits in 2023, alleging the same disability onset date—December 25, 2019. (Tr. at 54). Her 2023 application was denied based on res judicata at initial determination and reconsideration. (Tr. at 122, 127). The ALJ then concluded that McBryde's 2023 application for disability benefits repeated the same issues as her 2020 application, that she failed to provide new evidence establishing her disability before the expiration of her disability period, and that res judicata barred her 2023 disability claim. (Tr. at 55). The Appeals Council agreed. (Tr. at 1). Because McBryde's primary claim for disability benefits filed in 2020 received full administrative and judicial evaluation, and

her 2023 application was an effort to reopen the substantive merits of her original claim, this Court does not have subject matter jurisdiction to review the Commissioner's application of administrative res judicata. Nevertheless, when jurisdiction is unavailable under 405(g), the court may review the Commissioner's decision if the claimant alleges a colorable claim of unconstitutionality. *Sanders*, 430 U.S. at 109.

McBryde makes several broad constitutional claims related to her original 2020 application for disability benefits, including First Amendment claims connected to her decision not to seek medical treatment on December 25, 2019, and allegations that she was denied due process in the evaluation of her 2020 application. Doc. 14 at 1–5, 17, 37. As noted earlier, this court in *McBryde I* affirmed the Commissioner's original decision denying McBryde's 2020 application for disability benefits, and McBryde did not appeal the court's decision. Because McBryde's 2020 disability application was fully resolved, issues related to that application cannot be relitigated and are not properly before this court.

McBryde also makes several constitutional arguments pertaining to her 2023 application for disability benefits, including that (1) her local social security office refused her proffer of supporting evidence on multiple occasions in an effort to impede the evaluation of her case in violation of due process; (2) the ALJ "performed an inaccurate review and improper consideration of the record" resulting in legal error that violated due process; (3) her hearing before the ALJ was unfair and adversarial; (4) the Appeals Council violated due process in "losing" her request for review, mishandling "suppressed evidence," and failing to maintain necessary records; and (5) the Appeals Council violated

6

due process by failing to apply correct legal standards.[2] Doc. 14 at 5–8, 41, 46, 52–53, 60. The Court will review these alleged constitutional violations in turn.

First, McBryde's allegations that the local social security office and the Appeals Council denied her due process by refusing submission of documents and "losing" documents is meritless. McBryde attached the documents she claims are "missing" to her amended brief, which include Judge Volpe's Recommended Disposition in *McBryde I*, Jefferson Regional Medical Center records from July 2020, medical records from a wellness visit with Dr. Johnston from April 2019, and correspondence between McBryde and a representative from the office of United States Representative Bruce Westerman regarding McBryde's attempt to submit documents to her local social security office. *See* Doc. 14. None of the attached documents advance McBryde's 2023 claim of disability. The medical records McBryde included were all part of the record in *McBryde I*; Judge Volpe's decision also pertains to the 2020 disability determination and is a matter of public record; and the email communications between McBryde and Representative Westerman are irrelevant. McBryde fails to identify any other documents that were excluded improperly or are missing.

---

[2]McBryde must have "a property interest" to qualify for due process protections under the Fifth Amendment. The Supreme Court has held that a person receiving benefits has a property interest in the continued receipt of the benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The Court has not addressed whether an applicant has a protected property interest in benefits he or she hopes to receive. *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 n.8 (1985). In *Richardson v. Perales*, the Supreme Court assumed that due process applied to social security disability hearings without determining whether Perales had a property interest. 402 U.S. 389, 401–02 (1971). Likewise*,* this Court will assume that due process applies without determining whether McBryde had a property interest in the benefits.

Next, McBryde's assertions that both the ALJ and Appeals Council violated due process by inaccurately reviewing the record and misapplying legal standards also lack merit. First, McBryde fails to offer legal or factual support for a specific violation of due process. Although she cites a plethora of social security disability cases,[3] the cases refer to legal standards for the evaluation of her primary application for benefits, which as noted earlier, is not before this Court. To the extent she argues the Commissioner erred in applying legal standards to the evaluation of her 2023 disability application, her fundamental disagreement is with the Commissioner's decision that res judicata bars her second application, which this Court lacks jurisdiction to review. Although she claims that the ALJ ignored the additional evidence she provided with her 2023 application, such as her "voluntary declaration of truth under oath in the form of an unrebutted affidavit that supported [her] lawful/legal arguments," the ALJ said that he reviewed that evidence and found it unavailing. (Tr. at 54–55). McBryde simply disagrees with the Commissioner's ultimate decision not to reopen her disability claim, which does not rise to the level of a violation of due process.

Finally, McBryde's contention that the telephone hearing the ALJ held on May 7, 2024, was unfair and adversarial in violation of her right to due process also fails. McBryde argues that she was not allowed to have a representative or any assistance during the

---

[3]The Commissioner identifies several instances regarding the reliability of citations and quotations throughout McBryde's seventy-page amended brief. *See* Doc. 40, at 12–17. This Court has reviewed and confirmed inaccuracies. Because McBryde is proceeding pro se, the Court will extend leniency in this instance; however, the Court may strike any further submissions that include what appear to be incorrect citations or quotations and may take further action as appropriate.

hearing, that she was asked not to speak at one point by the ALJ during the hearing, and that the ALJ "talked so fast that [McBryde] could not keep up or comprehend and she got very flustered." Doc. 14, at 52. The ALJ informed McBryde at the beginning of the hearing that it was "not open to the public," and to protect her privacy, she had to be alone. (Tr. at 60). The ALJ reminded McBryde that she was entitled to have representation, legal or non-legal, and that if she wanted to secure a representative, he would postpone the hearing. (Tr. at 61–62). McBryde stated she understood her right to representation and "choose to move forward without representation." (Tr. at 62). At one point, the ALJ asked McBryde "let's try not to talk over each other . . . It's a little bit hard because we're on the phone." (Tr. at 71). Otherwise, the thirty-minute hearing proceeded without incident. (Tr. at 60–79). There is no indication in the transcript that McBryde had difficulty understanding the ALJ's questions nor did she at any point ask him to speak more slowly. There is simply no indication that the hearing afforded McBryde was fundamentally unfair, and McBryde has failed to establish a viable claim for violation of her right to due process.

**III.   <u>Conclusion</u>**:

For the reasons stated above, the Court lacks jurisdiction to review the merits of the case, and McBryde has failed to demonstrate a violation of due process. Accordingly, it is RECOMMENDED that McBryde's Complaint be DISMISSED.

IT IS SO ORDERED this 5th day of February 2026.

_____
UNITED STATES MAGISTRATE JUDGE

9